

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2006

# USA v. Wilson

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3883

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Wilson" (2006). *2006 Decisions.* Paper 253.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/253

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3883

UNITED STATES OF AMERICA

v.

MICHAEL WILSON,
a/k/a MIZ

Michael Wilson,

Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00580-3)
District Judge: Honorable Petrese B. Tucker

Argued on September 28, 2006

Before: RENDELL, ROTH and GIBSON*, <u>Circuit Judges.</u>

(Opinion Filed: November 1, 2006)

Johanna E. Markind, Esquire (ARGUED)
1500 Walnut Street, Suite 1100
Philadelphia, PA 19102

Counsel for Appellant

*Honorable John R. Gibson, Senior Eighth Circuit Judge, sitting by designation.

Patrick L. Meehan, Esquire
United States Attorney
Robert A. Zauzmer, Esquire
Assistant United States Attorney
Chief of Appeals
Mary E. Crawley, Esquire
Assistant United States Attorney
Paul G. Shapiro, Esquire (ARGUED)
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

       Counsel for Appellee

—————

OPINION

—————

**ROTH,** <u>Circuit Judge</u>:

On October 13, 2004, Michael Wilson and twelve other individuals were indicted on one charge of conspiracy to commit bank fraud and two charges of bank fraud, in violation of 18 U.S.C. § 371 and 1344, respectively. Wilson provided an extensive confession and, on April 4, 2005, pleaded guilty to the three counts. He was not party to any plea agreement. The District Court held a sentencing hearing on August 3, 2005, at which it determined that Wilson fell within a Sentencing Guidelines range of 84 to 105 months imprisonment. Departing downward, the District Court imposed a sentence of 72 months imprisonment, three years supervised released, restitution of $430,000, and a special assessment of $300. Wilson appeals, challenging this sentence as unreasonable. For the reasons set forth below,

2

we affirm the sentence.

## I. **Jurisdiction and Standard of Review**

The District Court had jurisdiction over this case under 18 U.S.C. § 3231.  We have jurisdiction to review Wilson's sentence for reasonableness under 18 U.S.C. § 3742(a)(1) and 28 U.S.C. § 1291.  In reviewing the reasonableness of Wilson's sentence, we look to whether the District Court considered the factors listed in 18 U.S.C. § 3553(a).  United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006).  We exercise plenary review over the District Court's legal interpretation of the Sentencing Guidelines and review its factual findings for clear error.  United States v. Irvin, 369 F.3d 284, 286 n.2 (3d Cir. 2004).

## II. **Background**

From July 2002 until February 2003, Wilson took part in a scheme to defraud Citizens Bank and PNC Bank by recruiting individuals to open sham bank accounts, then drawing funds from these accounts.  The leader of the conspiracy was David Bernard; Wilson, along with four other individuals, assisted Bernard as recruiters.  Under the overall scheme, the recruiters found individuals in need of money, induced them to open bank accounts in their own names, brought them to the banks, and then retained their automatic teller machine cards and passcodes.  Once in control of these accounts, the recruiters would use them to fraudulently obtain money from the banks, either by depositing worthless checks and withdrawing the funds before the banks discovered the fraud, or by making ATM withdrawals during hours when the banks were unable to verify whether the accounts contained sufficient funds.  All told, the conspirators managed to defraud Citizens Bank of

3

approximately $430,207 and PNC Bank of approximately $171,024.

On October 13, 2004, Wilson provided a written confession in which he catalogued much of his involvement in the conspiracy. He admitted to driving individuals to Citizens Bank to open accounts, averaging five to ten people per week at the height of his activity. Wilson also admitted to personally recruiting approximately six account openers (out of a total 179) and personally withdrawing funds from Citizens Bank accounts. In his confession, Wilson demonstrated knowledge of the scheme's fundamental operations and the identities of at least most of his co-conspirators. Perhaps most strikingly, Wilson recounted his attendance at two motivational meetings held at a hotel where approximately 25-30 individuals gathered to discuss their strategic vision for the conspiracy. Wilson recalled Bernard speaking from the microphone about the conspirators' dealings with both Citizens Bank and PNC Bank. Despite attending these meetings in which conspirators discussed the fraud against both banks, Wilson maintains that his involvement was limited to defrauding Citizens Bank. However, the government produced additional evidence linking Wilson to the PNC part of the conspiracy. The District Court found that Wilson participated in defrauding both banks and held him responsible for a loss of over $400,000.

## III. Discussion

Wilson challenges his sentence in two respects. First, he argues that the District Court incorrectly calculated the applicable Guidelines range. Second, he argues that regardless of whether the District Court incorrectly calculated the range, his sentence was unreasonable in light of the factors listed in 18 U.S.C. § 3553(a). We consider these arguments in turn.

4

## A.  Calculation of Guidelines Range

Although we ultimately review Wilson's sentence for overall reasonableness, our first task is to determine whether the District Court correctly calculated the applicable sentencing range under the Sentencing Guidelines.  We do this because among the factors that a District Court acting reasonably must consider is what sentencing range is applicable under the Guidelines.  18 U.S.C. § 3553(a)(4).  If the District Court relies upon an incorrect application of the Guidelines, it is therefore in error.  See Cooper, 437 F.3d at 330.

As an initial matter, Wilson argues that the District Court erred in its application of the Guidelines by finding facts at sentencing by a preponderance of the evidence, rather than beyond a reasonable doubt.  As we have already held, when a district judge finds facts in calculating the applicable range under the Sentencing Guidelines, the applicable standard of proof is preponderance of the evidence.[1]  See Cooper, 437 F.3d at 330.  The District Court did not need to find facts by any more exacting a standard.[2]

Next, Wilson challenges a fourteen-point enhancement that was added under United States Sentencing Guideline § 2B1.1(b) for committing an offense involving a loss of over $400,000 but under $1,000,000.[3]  He argues that in reaching the $400,000 figure, the District

---

[1]None of the facts found at sentencing in this case would constitute a "separate crime." Cf. Cooper, 437 F.3d at 330 n.7.

[2]As to its finding regarding the amount of loss, the District Court stated that it had before it sufficient evidence to find over $400,000 loss under *either* standard.

[3]Because of the dates of Wilson's relevant conduct, we look to the 2002 Sentencing Guidelines.

Court incorrectly attributed to Wilson losses caused by others for which he was not legally responsible. Because Wilson was involved in a criminal conspiracy, he is responsible for both the losses caused by his personal conduct, U.S.S.G. § 1B1.3(a)(1)(A), and the losses caused by "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The question before us is whether the District Court clearly erred in finding, by at least a preponderance of the evidence, that for Wilson, these losses together totaled over $400,000.

In United States v. Collado, 975 F.2d 985 (3d Cir. 1992), we held that in attributing losses caused by a defendant's co-conspirators to that defendant, a district court must consider whether the co-conspirators' conduct was in furtherance of the jointly-undertaken activity, within the scope of the defendant's agreements, and reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake. 975 F.2d at 995. Wilson contends that the District Court erred because it did not determine how much of the loss either occurred before Wilson joined the conspiracy or was otherwise beyond the scope of his agreement. The District Court, however, was not obligated to make such determinations. Although a district court's inquiry must be individualized to the defendant, Collado "did not impose an immutable requirement that the district court hold extensive hearings to make explicit, particularized findings as to the exact date on which each defendant committed to the conspiracy or the precise contours of each conspirator's agreement." United States v. Rennert, 374 F.3d 206, 214 (3d Cir. 2004). As long as the scope of the defendant's involvement is clear from the record, the district court's decision

may be affirmed.  United States v. Duliga, 204 F.3d 97, 101 n.2 (3d Cir. 2000).

The record is clear that the scope of Wilson's agreement was significantly broader than he now contends.  Wilson, by his own confession, was thoroughly immersed in the conspiracy.  His participation included recruiting account openers, bringing the openers to the bank, withdrawing funds from the accounts, and attending conspiratorial strategy sessions in which the overall scheme was discussed and planned.  Wilson had extensive, albeit incomplete, knowledge of the scheme, and he participated in most every stage of its execution.  Moreover, the District Court concluded from the evidence in the record that Wilson participated in a scheme that included defrauding both Citizens Bank and PNC Bank, meaning that the loss from both banks fell within the scope of Wilson's agreement.  The total loss figure as to both banks is well above $400,000, further minimizing the need for highly particularized findings regarding the scope of Wilson's agreement.  According to the record before the District Court, a preponderance of the evidence supported the conclusion that Wilson agreed to facilitate a broad scheme that caused the foreseeable loss of some amount clearly over $400,000.

Last, Wilson challenges the District Court's decision to not grant a two-point reduction under U.S.S.G. § 3B1.2(b) for being a "minor participant" in the criminal activity. Under Application Note 5, in order to qualify as a "minor participant," an individual must be "less culpable than most other participants."  Given the 179 account openers who participated in the scheme, each of whom was less culpable than Wilson, it is difficult to view Wilson as a minor participant. Particularly in light of its finding that Wilson played an

7

"integral part" in the scheme, the District Court did not err in refusing to grant a reduction under § 3B1.2(b).

B.  **Overall Reasonableness of Sentence**

Even though we find that the District Court correctly applied the Guidelines, we must also examine whether the sentence it imposed is reasonable in light of 18 U.S.C. § 3553(a). Wilson argues that the District Court inadequately considered sentencing disparities under § 3553(a)(6), which requires the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  We disagree.

First, Wilson notes that Bernard (the leader of the scheme) was sentenced to 63 months of incarceration, nine months fewer than the 72 months that Wilson was sentenced to serve.  This fact is of little moment.  Section 3553(a)(6) does not direct the sentencing court to avoid sentencing disparities between any two individuals found guilty of similar conduct.  Rather, § 3553(a)(6) restricts itself to sentence disparities among defendants *with similar records* who have been found guilty of similar conduct.  Wilson and Bernard did not have similar criminal records.  Wilson's lengthy criminal record placed him in a criminal history category of VI, whereas Bernard's significantly shorter record placed him in a criminal history category of II.  Had Wilson's criminal history been similar to Bernard's, he would have qualified for an advisory range of 46-57 months incarceration, the maximum of which is less than the 63 months to which Bernard was sentenced.

Second, Wilson argues that the District Court acted unreasonably by failing to

8

consider sentences imposed by federal courts in other jurisdictions. When Wilson's counsel presented the District Court with a handful of examples at sentencing, the Court dismissed the comparison, noting that it could not account for what courts in other jurisdictions may do. Such dismissal was appropriate. Given that the District Court had no information on the facts of the other cases and that Wilson's sentence fell well below the Guidelines recommendation, the District Court was reasonable in its unwillingness to consider discrepancies allegedly arising from this scattershot of other federal cases.

Finally, Wilson argues that his sentence is unreasonable because it is longer than the sentence he would have received had he been prosecuted in state court. He submits that under Pennsylvania law, his conduct would have resulted in a sentence of 27-33 months of incarceration. The District Court acted reasonably in finding this fact unpersuasive. Wilson notes that in Pennsylvania, he would have been punished for the crime of theft by deception and causing a loss of over $100,000. From this fact alone, it is apparent that Pennsylvania criminal law is markedly different from federal criminal law, under which bank fraud is differentiated from other forms of theft and crimes causing a loss of over $400,000 are punished more severely than are crimes causing a loss merely exceeding $100,000. The District Court was well within the bounds of reasonableness in determining that the comparison was inapt.

Moreover, the disparities in sentencing that the U.S. Sentencing Guidelines are intended to reduce are disparities between sentences imposed under the provisions of the Guidelines, *i.e.*, federal sentences. In view of the advisory function of the Guidelines, we

9

assume that the Guidelines advise on the parity of sentences which fall within the Guidelines' range and that the "sentencing disparity" referred to in § 3553(a)(6) is relevant to a comparison of federal to federal sentences – not federal to state sentences – so long as the federal sentences fall within the Guidelines' range.

## IV. **Conclusion**

For the reasons set forth above, we will affirm the judgment of sentence of the District Court.